**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT BURKE,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, *et al.*,<br><br>Defendants. | ) | Civil Action No. 15-1151 (EGS) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, appearing *pro se*, challenges in a 57-count complaint the responses of several Department of Justice ("DOJ") components, as well as those of the Internal Revenue Service ("IRS") and the National Archives and Records Administration ("NARA") to his sweeping requests for records under the Freedom of Information Act ("FOIA") and the Privacy Act. Claiming that they have satisfied their disclosure obligations, the DOJ components—Executive Office for United States Attorneys ("EOUSA"), Federal Bureau of Prisons ("BOP"), and the United States Marshals Service ("USMS")—and NARA have moved jointly for summary judgment under Rule 56 of the Federal Rules of Civil Procedure [Dkt. # 30]. In addition, the IRS has moved to dismiss or for summary judgment [Dkt. # 34]. Plaintiff has filed an opposition to each motion [Dkt. ## 36, 38], and the IRS and the remaining defendants have filed separate replies [Dkt. # 39 and # 44, respectively]. In addition, plaintiff has filed a motion for *in camera* inspection [Dkt. # 45], which the defendants have opposed.

Having considered the motions, oppositions, replies, and the entire record, and for the reasons explained below, the Court will grant in part and deny in part without prejudice defendants' joint motion for summary judgment, and it will grant the IRS's motion for summary judgment. In addition, the Court will deny plaintiff's motion for an *in camera* inspection.

**I. BACKGROUND**

As a backdrop to plaintiff's claims, the Court begins briefly with his conviction. A federal jury in the Eastern District of Pennsylvania convicted plaintiff in 1993 of "the murder of Donna Willard, a federal witness," and the court sentenced him to prison for life. *United States v. Burke*, 193 Fed. App'x 143, 144 (3d Cir. 2006) (per curiam). The U.S. Court of Appeals for the Third Circuit affirmed plaintiff's conviction and sentence, and plaintiff has had no success in various post-conviction proceedings. *See id*. James David Louie, a name that appears repeatedly in the instant FOIA requests, testified at plaintiff's trial; he is one of two witnesses whom plaintiff has accused of "presenting false testimony." *Id*.

**1. FOIA Requests to EOUSA (Counts 1-24 and 56)**

A. <u>Request No. 2015-00360</u>

On August 9, 2014, plaintiff requested reports, memoranda "or anything in writing" related to a plea offer to him by the United States Attorney's Office for the Eastern District of Pennsylvania ("U.S. Attorney's Office"). Decl. of Vinay J. Jolly, Ex. A. [Dkt. 31-7]. In a letter dated January 29, 2015, EOUSA informed plaintiff that a search had located ten boxes containing potentially responsive records. It further informed that plaintiff's two hours of free search time had been exhausted and that he could either approve release of the 100 pages he was entitled to for free or tender an advance payment of $280 to continue the search. Ex. C. to Jolly

Decl. Plaintiff opted for the former, at least for the time being, *see* Ex. D, and EOUSA released the 100 free pages in full on August 13, 2015, Ex. K.

B. <u>Request No. 2015-00971</u>

On December 14, 2014, plaintiff requested records pertaining to "Mr. James David Louie." Ex. L to Jolly Decl. Plaintiff requested, among other records, documents "detailing . . . prisons and jails" where Louie was confined from December 1990 until his release "and for what time period," and Louie's visitation records during his incarceration. *Id.* In a letter dated January 13, 2015, EOUSA informed plaintiff that it could not release third-party records without the individual's express authorization and consent, proof of the individual's death, "or a clear demonstration that the public interest in disclosure outweighs the [individual's] personal privacy interest[.]" Ex. M. EOUSA further informed that it could release any public records that might exist in its files, but it would need "a letter asking for the public documents." *Id.* EOUSA has no record of receiving a third-party authorization from plaintiff. Jolly Decl. ¶ 6 n.1.

C. <u>Request No. 2015-01262</u>

On January 7, 2015, plaintiff again requested his records located in the U.S. Attorney's Office and records pertaining to Louie "and/or The Willard Murder Trial, time frame 1988—Present." Ex. S to Jolly Decl. In a letter dated February 19, 2015, EOUSA again advised plaintiff what he needed to provide in order to obtain third-party records or any public records. Ex. U. As to his records, EOUSA, in a letter dated July 8, 2015, again informed plaintiff that it had located ten boxes containing potentially responsive records; that the two hours of free search time had been exhausted; and that plaintiff could receive 100 free pages or tender $320 to continue the search. Ex. X. Plaintiff requested the 100 free pages, Ex. Y, and, on November 10,

2015, EOUSA released in full "another 100 free pages" of information pertaining to plaintiff. Jolly Decl. ¶ 29 and Ex. Z.

D. <u>Request No. 2015-01267</u>

On February 5, 2015, plaintiff requested all records "where the name Joan Markman, Esquire appears" in a specifically numbered criminal case. Ex. AA to Jolly Decl. Plaintiff provided proof of Markman's death. Thus, following plaintiff's payment of an assessed fee, *see* Exs. EE and FF, EOUSA, by letter dated January 21, 2016, released 572 pages in full and seven pages in part, and it withheld 42 pages completely. Ex. GG. EOUSA cited FOIA exemptions 5, 6, 7(C), 7(D), 7(E) and 7(F) as the bases for its withholdings. *Id*. In addition, EOUSA informed plaintiff that it had referred records that originated with the FBI and the U.S. Postal Inspection Service ("USPIS") to those entities to review and to provide a direct response to plaintiff. *Id*.

The records referred to USPIS were "Memorandums of Interview." Decl. of Kimberly Williams [Dkt. # 31-12] ¶ 4. USPIS withheld third-party information except that of "the plaintiff and AUSA Markman" under FOIA exemptions 6 and 7(C). *Id*. ¶¶ 5-7.

E. <u>Request Nos. 2015-01442, 01443 and 2016-00748</u>

On January 21, 2015, plaintiff requested records pertaining to a woman named "Winnie" who, according to plaintiff, was David Louie's live-in girlfriend. Jolly Decl., Ex. HH. In a letter dated March 6, 2015, EOUSA again advised plaintiff what he needed to provide in order to obtain third-party records or any public records. EOUSA has no record of receiving a third-party authorization from plaintiff. Jolly Decl. ¶ 39.

On July 15 and August 10 of 2015, plaintiff requested the public documents associated with his January 21, 2015 request. *Id*. ¶ 40 and Ex. JJ. Following plaintiff's payment of assessed fees, EOUSA, by letter dated January 20, 2016, released 429 pages in full of public

records pertaining to "David Louie Girlfriend, Winifred Warlow" that were located in the Eastern District of Pennsylvania. Jolly Decl., Ex. MM.

F. Request No. 2015-1701

On February 15, 2015, plaintiff requested records pertaining to "any agency contact with 'Masonic Ledge' [sic] that [plaintiff] was a member of which was, 'Jurusalem' [sic] Lodge in Philadelphia[,] Pennsylvania." Jolly Decl., Ex. SS. Following plaintiff's payment of assessed search fees, EOUSA informed plaintiff by letter dated January 20, 2016, that its search had located no responsive records. *Id.*, Ex. ZZ.

G. Requests Nos. 2015-02075 and 2016-01347

On March 18, 2015, plaintiff requested records "concerning the payments of any money pursuant to 5 USC 4502 to 5 USC 4505" to: "a) District Court Judge William Yohn, b) Magistrate Judge Mellenson, c) Special Agent Kane, d) AUSA Dobkin e) AUSA Joan Markman." Jolly Decl., Ex. AAA. In a letter dated February 12, 2016, EOUSA informed plaintiff that a search for records in the Eastern District of Pennsylvania had located no responsive records. It explained that the U.S. Attorney's Office "does not have records for items a-c" and, because both AUSAs had "left the office," that plaintiff "may check [for] the[ir] personnel records at the National Archives Records Administration . . . ." *Id.,* Ex. HHH.

**2. FOIA Request to the FBI (Counts 25-45)**

A. Request No. 1319937-000

On December 22, 2014, plaintiff requested all FBI " 'Inserts' filed with . . . before or . . . after any F.B.I.'s report, during investigation at Philadelphia, PA 'Field Office', during 1988—to—Present, concerning" himself "and or James David Louis." Decl. of David M. Hardy, Ex. A at 4, ECF 31-2.

On January 4, 2015, plaintiff requested documents “detailing all correspondence” from the U.S. Attorney General’s Office with regard to himself, Louie “and/or The Donna Willard Murder Trial, including the Government’s Proposed Memorandum and Indictment on the Death Penalty.” *Id.*, Ex. B at ECF p. 9. Plaintiff also requested documents pertaining to Judge William Yohn with regard to the murder trial, plaintiff and Louie, *id*. at ECF p. 12, “Third Circuit Judge Samuel Alito—Supreme Court Justice” with regard to the murder trial, plaintiff and Louie, *id*. at ECF p. 15, and the U.S. Attorney for the Eastern District of Pennsylvania with regard to same, *id*. at ECF pp. 18, 21. On January 21, 2015, plaintiff requested documents, including “all interviews,” pertaining to “Winnie[.]” Hardy Decl., Ex. D.

On February 5, 2015, plaintiff requested records pertaining to former AUSA Joan Markman with regard to the murder trial, plaintiff and Louie, including “all documents concerning why and when . . . Markman . . . was removed from either [his] and/or . . . Louie[’s] case and the reasons why.” Hardy Decl., Ex. E at ECF p. 34.

On February 25, 2015, plaintiff requested records pertaining to “any agency contact with ‘Masonic Ledge’ [sic] that [plaintiff] was a member of which was, ‘Jurusalem’ [sic] Lodge in Philadelphia[,] Pennsylvania.” *Id.*, Ex. G. at ECF p. 51. Plaintiff supplemented that request on March 13, 2015 with two third-party affidavits and a downward departure motion filed by the United States in Louie’s criminal case in the Eastern District of Pennsylvania. *Id.*, Ex. J. On April 6, 2015, plaintiff requested records pertaining to Morton Laken, who was deceased, and at some point, he requested records pertaining to Roberta Suzanna Burke.

The FBI combined the foregoing requests into one request since the responsive material was located in the same case file. *See* Hardy Decl., Ex. N.

Meanwhile, in a letter dated March 17, 2015, the FBI informed plaintiff that it had located 7,249 pages that were potentially responsive to the request for his records. Because of his incarceration, the FBI gave plaintiff the option of providing an alternate address if he wanted to have the material released on a CD, which was significantly cheaper than a paper release. *See* Hardy Decl., Ex. K (cost assessment letter).

In a letter dated April 22, 2015, in light of plaintiff's additional request for Roberta Burke's records, the FBI reminded plaintiff that he had previously requested the 100 free pages, and it further advised him as to what he needed to provide in order to obtain third-party records, of which at that point the FBI was neither confirming nor denying their existence. Hardy Decl., Ex. N.

On May 5, 2015, plaintiff confirmed his desire to receive the 100 free pages; he provided no third-party authorizations. Hardy Decl. ¶ 19 and Ex. O. On June 30, 2015, the FBI released 102 of 130 reviewed pages. It withheld information under FOIA exemptions 3, 6, 7(C), 7(D) and 7(E), and under Privacy Act Exemption (j)(2), and advised plaintiff about appealing to the Office of Information Policy ("OIP") within 60 days. *Id.*, Ex. U. The FBI has no record of plaintiff filing an appeal. Hardy Decl. ¶ 26.

B. <u>Request Nos. 1319939-000, 1320278-000, 1325349-000</u>

The first listed request addressed the part of plaintiff's December 22, 2014 request for James David Louie's records. Hardy Decl. ¶ 27 and Ex. X. In a letter dated January 15, 2015, the FBI informed plaintiff what he needed to provide before it could process the requested third-party records. *Id.*, Ex. Y. Because plaintiff did not provide the requested information, the FBI administratively closed the request on February 25, 2015. Hardy Decl. ¶¶ 29-30. The same was repeated for Request No. 1320278-000 (seeking records pertaining to Keith Burke, Justice Alito,

Judge William Yohn, James David Louie, Javier Labron, Andrew Tronco, Anthony Cimino), Hardy Decl. ¶¶ 38-40 and Exs. EE-GG; and Request No. 1325349-000 (seeking records pertaining to Judge Yohn, Magistrate Judge Mellenson, Special Agent Kane, AUSA Dobkin and AUSA Markman), Hardy Decl. ¶¶ 55-60 and Exs. CCC-GGG.

C. Request No. NFP-43210

On January 4, 2015, plaintiff requested "all documents held in your possession, between the Office of F.B.I. in Philadelphia, Pa. and F.B.I. headquarters in Washington, D.C. during the time frame 1988---Present." Hardy Decl., Ex. Z. In a letter dated January 29, 2015, the FBI informed plaintiff that the request did not "contain enough descriptive information to permit a search of our records." *Id*., Ex. AA. It listed the type of information that could help locate responsive records, and it included an FBI Fact Sheet. By letter dated June 30, 2015, in response to plaintiff's May 5, 2015 appeal, the OIP closed the appeal after noting that the FBI had informed him that he had not reasonably described the records sought and that it could not process his request in any event until plaintiff had submitted a notarized signature or a certification of identification. Hardy Decl. ¶¶ 33, 36 and Ex. DD.

D. Request No. 1326095-000

On March 31, 2015, plaintiff requested all "reports, memorandums, statements, Airtels" and letters or other writings on "A. Charles Peruto, Sr. Esq.," who is deceased. Hardy Decl., Ex. XX. In a letter dated April 22, 2015, the FBI informed plaintiff that its search of its Central Records system located no responsive records. It invited plaintiff to submit additional information pertaining to Peruto that he "believe[d] was of investigative interest to the Bureau," to permit an additional search. *Id*. In his appeal to OIP on May 5, 2015, plaintiff challenged the

FBI's alleged refusal to respond to his request but not the FBI's no-records response. Hardy Decl. ¶ 51 and Ex. ZZ.

E. Request No. 1327374-000

On April 10, 2015, plaintiff requested records pertaining to the handling of his FOIA requests from 2014 to the present. Hardy Decl., Ex. HHH. The FBI titled the request "Directives Concerning 'How to Handle' FOIA/FOIPA Requests from this Requester," and, in a letter dated April 30, 2015, it informed plaintiff that a search of its Central Records System had located no responsive records. *Id*., Ex. III. In a letter dated July 6, 2015, OIP affirmed the FBI's no-records response upon concluding "that it conducted an adequate, reasonable search for such records." *Id*., Ex. LLL.

**3. FOIA Requests to BOP (Counts 46-49)**

A. Request No. 2015-02137/2015-02597

On December 12, 2014, plaintiff requested prison records with regard to Louie, "[a]ll Marshals Service reports on . . . Louie generated from December 1990 till [his release]," and [a]ll correspondence to Pennsylvania, New Jersey, and/or municipality concerning [plaintiff] and/or . . . Louie." Decl. of Roy Lathrop [Dkt. 30-3] ¶ 10. In a letter dated July 22, 2015, BOP informed plaintiff that it could not process the request because it could not "identify the subject of [the] request," and that he would need to provide "written authorization" from the third-party individual before BOP could "confirm a search based on the personal identifiers you provide." Lathrop Decl., Ex. 4.

B. Request No. 2015-03482

In February 2015, plaintiff requested documents that AUSA Markman either sent or received with regard to plaintiff, Louie and the murder trial. *See* Lathrop Decl. ¶ 5. In a letter

dated April 10, 2015, BOP informed plaintiff that its search had located no responsive records. *Id.*, Ex. 1. OIP affirmed BOP's no-records response by letter dated July 27, 2015. *Id.*, Ex. 3. OIP explained that as to plaintiff's request for his and Markman's records, BOP had "conducted an adequate, reasonable search for such records." *Id.* at 1. As to plaintiff's request for Louie's records, OIP affirmed BOP's decision "on modified grounds," explaining that "while BOP conducted a search for Louie's records, it was not required to do so" since any such records would be "categorically exempt from disclosure pursuant to FOIA Exemption 7(C)[.]" *Id.*

As to the remaining Counts of the Complaint against BOP, 46 and 48, BOP's declarant avers that BOP did not receive plaintiff's alleged requests dated April 3, 2015, and April 10, 2015. Decl. of Kimberly Blow [Dkt. # 30-6] ¶¶ 5-10.

**4. FOIA Requests to the U.S. Marshals Service (Counts 50-52)**

A. Request No. 2015-27399

On December 12, 2014, plaintiff requested the same type of records he had sought from BOP with regard to Louie. *See* Ex. A to Decl. of William E. Bordley [Dkt. 30-2]. In a letter dated January 5, 2015, the Marshals Service informed plaintiff that he needed to provide authorization from Louie to disclose any such records or proof of Louie's death. Bordley Decl., Ex. B. The Marshals Service has no record of having received the requested third-party consent. Bordley Decl. ¶ 4.

In a letter dated April 27, 2015, denying plaintiff's appeal of the Marshals Service's determination, OIP affirmed "on modified grounds," explaining that the Service "properly refused to confirm or deny the existence of records" in the absence of Louie's consent to disclosure, proof of death, official acknowledgment of an investigation, or an overriding public interest. *Id.*, Ex. E.

B. Request No. 2015-27685

On February 5, 2015, plaintiff requested the same type of records he had sought from BOP with regard to AUSA Markman, Louie, himself and the murder trial. *See* Ex. F to Bordley Decl. Plaintiff attached proof that Markman had died on January 14, 2015. In a letter dated March 27, 2015, the Marshals Service informed plaintiff that a search was underway for his records and that his request for Louie's records was denied "absent a written release from [Louie]." Bordley Decl., Ex. H. In a letter dated May 12, 2015, the Service informed plaintiff that a search of its files in the Eastern District of Pennsylvania had located no records responsive to his request with regard to himself and Markman. *Id*., Ex. J. In a letter dated July 14, 2015, OIP denied plaintiff's appeal "from the failure of the United States Marshals Service . . . to respond to your request," explaining that the Service had responded to the request "with its first interim response by letter dated March 27, 2015, and . . . its final response . . . dated May 12, 2015." *Id*., Ex. M.

C. Request No. 2015-28167

On April 10, 2015, plaintiff requested records pertaining to the processing of his FOIA requests from 2014 to the present. Bordley Decl., Ex. N. On August 27, 2015, the Marshals Service released thirteen responsive pages, seven containing redacted third-party information under FOIA exemptions 6 and 7(C). *Id*., Ex. T and Bordley Decl. ¶¶ 25-31.

**5. FOIA Request to NARA (Count 57)**

On October 12, 2014, plaintiff requested, as he had from EOUSA, reports, memoranda "or anything in writing" related to a plea offer to him by the United States Attorney's Office for the Eastern District of Pennsylvania. Ex. A to Decl. of Joseph A. Scanlon [Dkt. 30-1]. In a letter dated October 24, 2014, NARA's FOIA office in College Park, Maryland, informed plaintiff that

"NARA/College Park was unable to locate any United States District Court records, but that his request was being forwarded to NARA's regional facility in Philadelphia for a separate response." Scanlon Decl. ¶ 12. In a letter dated December 24, 2014, NARA's Philadelphia Office informed plaintiff that it did not have any Criminal Case Files dated after 1983 and that it "do[es] not hold any records from the U.S. Attorney's Office after 1987." Scanlon Decl., Ex. E. Because plaintiff's case had "commenced after the dates for which [NARA] hold[s] records," plaintiff was advised to contact the U.S. Attorney's Office and the U.S. District Court, both in Philadelphia. *Id*. In addition, plaintiff was informed that the case "has not been transferred into archival custody and is held at the Federal Records Center in Philadelphia." *Id*. Therefore, the letter included the accession number, location, box number and case number plaintiff could provide the clerk of court. NARA's search yielded no responsive records at either its College Park, Maryland, facility or its Philadelphia regional office. *See* Scanlon Decl. ¶¶ 21-22.

**6. FOIA Requests to the Internal Revenue Service ("IRS") (Counts 53-55)**

On April 10, 2015, plaintiff requested records pertaining to the processing of his FOIA requests from 2014 to the present. Ex. A to Decl. of Denise Higley [Dkt. 34-3]. In a letter dated July 2, 2015, the IRS informed plaintiff that it had located no responsive records and advised him of his appeal rights. Higley Decl., Ex. D. The IRS has no record showing that plaintiff appealed the no-records determination, nor does its files contain FOIA or Privacy Act requests from plaintiff dated March 18, 2015 or April 16, 2015, Higley Decl. ¶¶ 11-12, as alleged in Counts 53 and 55 of the Complaint.

## II. LEGAL FRAMEWORK

### A. Rule 56

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party shows that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. FOIA

The FOIA requires agencies to disclose all requested agency records, 5 U.S.C. § 552(a), unless one of nine specific statutory exemptions applies, *id*. § 552(b). "It is designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Consumers' Checkbook, Ctr. for the Study of Servs. v. United States HHS*, 554 F.3d 1046, 1057 (D.C. Cir. 2009) (internal quotation marks omitted). "Consistent with 'the basic policy that disclosure, not secrecy, is the dominant objective of the Act,' the statutory exemptions are 'narrowly construed.' " *Id*. (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)); *see also Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) ("Given the FOIA's broad disclosure policy, the United States Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.' " (quoting *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988))).

"FOIA's 'strong presumption in favor of disclosure places the burden on the agency' to justify nondisclosure." *Consumers' Checkbook*, 554 F.3d at 1057 (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "The government is entitled to summary judgment if no material

facts are in dispute and if it demonstrates that withheld or redacted documents are not required to be disclosed under § 552(a) or are exempt from disclosure under § 552(b). *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015) (citations omitted). The government may satisfy its burden by submitting appropriate declarations and, where necessary, an index of the information withheld. *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). Moreover, " 'an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " *Id*. at 619 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

The Privacy Act specifically exempts from its nondisclosure provisions documents that are otherwise required to be disclosed under the FOIA. 5 U.S.C. § 552a(b)(2); *see Greentree v. United States Customs Serv*., 674 F.2d 74, 79 (D.C. Cir. 1982) (concluding "that section (b)(2) of the Privacy Act represents a Congressional mandate that the Privacy Act not be used as a barrier to FOIA access"). Because the defendants have addressed plaintiff's claims under the FOIA, and have disclosed non-exempt records, any challenge under the Privacy Act is essentially a non-issue.

## III. DISCUSSION

### 1. EOUSA

Plaintiff's focuses mostly on EOUSA's responses, specifically as they pertain to his request for plea offer documents (No. 2015-00360). He contends that the records he received

were not responsive. Plaintiff asserts that EOUSA "failed to mention the letter of November 20, 2015," where he complained that the released pages were non-responsive to his request allegedly for "plea agreement(s) only deal[ing] with me."[1] Opp'n at 5. Plaintiff states that he raised the same concerns in letters to EOUSA in September and October of 2015. And in the documents comprising his "appendix," plaintiff complains to EOUSA that it continued to send him "appellate transcripts" and other court documents that he did not request rather than the plea agreement records that he did request. This argument raises two intertwined questions: (1) whether EOUSA reasonably interpreted plaintiff's request, and (2) whether EOUSA conducted an adequate search for responsive records. The answer to both questions is yes.

**A. Search Requirements**

An inadequate search for records may constitute an improper withholding under FOIA. *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003). When a requester questions the search for responsive records, an agency is entitled to summary judgment if it demonstrates that no material facts are in dispute and that it conducted a search for records in its custody or control, *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150-51 (1980), that was reasonably calculated to uncover all relevant information, *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The agency, and the court, may rely on a reasonably detailed affidavit or declaration that explains the scope and method of the search. *Moore v. Nat'l DNA Index Sys.*, 662 F. Supp. 2d 136, 139 (D.D.C. 2009). A sufficient affidavit or declaration "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . . [S]o long as they are relatively detailed and non-

---

[1] Plaintiff's insistence that records exist about a "plea agreement" covering him, as opposed to plea offers, is puzzling since he was convicted following a jury trial.

conclusory, [such affidavits] are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and other citation omitted)). Where the government has met its burden, the requester may overcome summary judgment only by producing countervailing evidence to call into question the agency's identification and retrieval efforts. *Morley v. CIA.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). The adequacy of the search is determined by the methods, not the results. Thus, an agency's failure to locate a particular document (or documents) is not alone indicative of an inadequate search. *Moore*, 662 F. Supp. 2d at 139 (citing *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995)).

**B. EOUSA's Search**

EOUSA's declarant is an Attorney Advisor "assigned to the component . . . designated to administer the . . . FOIA . . . and the Privacy Act[,]" Jolly Decl. ¶ 1, and authorized "to release and withhold records requested under the FOIA/PA, *id*. ¶ 2. The declaration is based on the declarant's "personal knowledge, and information acquired . . . through the performance of my official duties." *Id*. In addition EOUSA has supplied the Declaration of Susan J. Falken, who is the Law Librarian in the U.S. Attorney's Office in Philadelphia, Pennsylvania, who conducted the searches in that office. Falken Decl. ¶¶ 1, 4-25 [Dkt. 31-11]. Falken characterized request 2015-00360 as seeking "any 'plea agreements that may have been offered or planned to be offered' to the requester." *Id*. ¶ 5. That was a reasonable, and literal, interpretation of the request. *See Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 102 (D.D.C. 2013) (an agency has

"a duty under the FOIA to select the interpretation that would likely yield the greatest number of responsive documents").

Falken describes her search as follows:

> I tried to locate the Robert Burke file via our USAO's CaseView and the Legal lnformation Office Network System ("LIONS"), via the requester's SSN, birthdate and U.S. Marshal's number. There were no matches in CaseView or LIONS. No case number was provided in the request. I sent an "Inquiry Guidance" request via APW asking EOUSA to contact the requester for more information. I later discovered a "corrected" request from Mr. Burke which included the case number of the file from which he was searching for plea agreements. I discovered that the case pre-dated LIONS and CaseView and there was no way to determine the actual number of boxes for the Plaintiff's case until they were received from the Federal Records Center. On December 1, 2014, I received 11 boxes of documents consisting of Mr. Burke's criminal file in response for request #2015-00360.

Falken Decl. ¶¶ 5-7. Jolly explains that "the Legal Information Office Network System ("LIONS") system . . . is the computer system used by United States Attorney offices to track cases and to retrieve files pertaining to cases and investigations. By use of [that] system, the user can access databases which can be used to retrieve the information based on a defendant's or individual's name, the USAO number (United States' Attorney's Office internal administrative number), and the district court case number." Jolly Decl. ¶ 68. Through the search methods employed, EOUSA retrieved records responsive not only to the request concerning plea offers but also to the broader requests 2015-01262, 01267 and 00748, which sought all of plaintiff's records, records pertaining to a deceased individual (Markman), and public records, respectively, and which yielded a vast number of pages. *Id*.

Plaintiff next faults EOUSA for failing to "segregate" any documents responsive to Request No. 2015-00971, contending that he sought not only Louie's records but also his own. Opp. at 34. But the form request that plaintiff completed, Jolly Decl., Ex. L, undermines that contention. Under "Type of Request," plaintiff checked only the box for "making a request for

records about someone or something other than myself," and under section 3 labeled "Records Requested," plaintiff typed "see / Attachment Letter Mr. James David Louie." Finally, in section 4 labeled "Requester's Identifying Information," which was to be completed "only if you are making a request for records about yourself," plaintiff typed "n/a." Thus, the Court finds that EOUSA reasonably interpreted request 2015-00971 as seeking third-party records (namely Louie's records), and, as explained later, that it properly refused to process the request without Louie's authorization.

Plaintiff suggests also that his request for documents "on what prisons or jails, and for what periods of time [Louie] was incarcerated there" did not seek third-party records because the information allegedly is a matter of public record via BOP's inmate locator service. Opp'n at 35. Plaintiff's argument is flawed foremost because any such records would necessarily be retrieved by Louie's personal identifiers. [2] Furthermore, the argument presupposes that Louie was incarcerated at a BOP facility, which plaintiff has not shown; EOUSA would have no obligation to search BOP's website in any event; and plaintiff "bears the burden of identifying specific information that is already in the public domain due to official disclosure," *Mobley*, 806 F.3d at 583, which he cannot satisfy simply by referring to BOP's inmate locator service. *See Callaway v. U.S. Dep't of Treasury*, 824 F. Supp. 2d. 153, 164 (D.D.C. 2011) (the plaintiff has the "initial burden" of " 'pointing to specific information in the public domain that appears to duplicate that being withheld' ") (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

The Court is satisfied that EOUSA reasonably interpreted plaintiff's requests and conducted reasonably adequate searches. Thus, it grants summary judgment to EOUSA on those contested issues. Plaintiff also challenges EOUSA's exemptions and *Vaughn* index, but he has

---

[2] BOP's inmate locator service allows for a search of current inmates by their prison number or name. *See* https://www.bop.gov/inmateloc.

not pointed to any specific withholdings. *See generally* Opp'n. Nevertheless, " 'a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.' " *Grimes v. D.C.*, 794 F.3d 83, 95 (D.C. Cir. 2015) (quoting Griffith, J. concurring). Thus, the Court turns next to EOUSA's withholdings.

**C. EOUSA's Withholdings**

On January 21, 2016, EOUSA released 572 unredacted pages and seven redacted pages. EOUSA withheld 42 pages in full. EOUSA has withheld information under FOIA exemptions 3, 5, 6, 7(C), 7(D) and 7(F). Jolly Decl. ¶ 35. In addition, EOUSA referred certain documents to USPIS, which purportedly withheld information under exemptions 6 and 7(C). But the record does not include USPIS's release letter, and it is unclear from USPIS's declaration, Dkt. # 31-12, if information was redacted from otherwise released documents or if documents were withheld completely. Consequently, as explained *infra* at pp. 26-27, the Court cannot grant summary judgment to EOUSA on its record referral.

**1. FOIA Exemption 3**

Exemption 3 covers records that are "specifically exempted from disclosure by statute," provided that such statute either requires withholding from the public "in such a manner as to leave no discretion on the issue or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). EOUSA invoked exemption 3 in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure , which regulates the disclosure of matters before a grand jury. Jolly Decl. ¶ 72 and Attach. A, *Vaughn* Index.

In this circuit, the grand jury exception is limited to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such . . . as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). EOUSA's declarant avers that it withheld "grand jury transcripts, subpoenas, letters, and related records pertaining to the direction and targets of the grand jury," which if disclosed would reveal "the scope of the grand jury's investigation by setting forth where the government sought to find evidence to develop its cases, how [it] developed its cases, and who [it] relied upon to develop the elements of crimes." Jolly Decl. ¶ 72 and *Vaughn* Index. Plaintiff has not specifically contested EOUSA's valid justifications. Accordingly, summary judgment is granted to EOUSA on it withholdings under Exemption 3.

**2. FOIA Exemption 5**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted). Materials shielded under this exemption include attorney work product, *see FTC v. Grolier, Inc.*, 462 U.S. 19, 27 (1983), and material protected by the "deliberative process" privilege, *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental

decisions and policies are formulated.'" *Id*. (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). It "is intended to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Id.* at 9 (citation and internal quotation marks omitted). The deliberative process privilege protects information that "is both predecisional and deliberative." *Pub. Employees for Envtl. Responsibility (PEER) v. Envtl. Prot. Agency*, --- F. Supp. 3d ---, ---, 2016 WL 5675410, at *4 (D.D.C. Sept. 30, 2016).

The attorney work product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 504 (1947). Records are properly withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney," Fed. R. Civ. P. 26(b)(3)(B), and were "prepared in anticipation of litigation," Fed. R. Civ. P. 26(b)(3)(A). The privilege also "covers factual materials prepared in anticipation of litigation." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Tax Analysts v. IRS.*, 117 F.3d 607, 620 (D.C. Cir. 1997)). It is settled in this circuit that the attorney work product doctrine "does not distinguish between factual and deliberative material"; thus, [i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005) (citation and internal quotation marks omitted).

EOUSA's declarant has sufficiently described records properly withheld as attorney work product, including an assistant United States attorney's (AUSA) "handwritten notes and assessment of potential charges," the U.S. Attorney's memorandum "discussing case strategy, assessment of witnesses, and evaluation of [the] case," and an AUSA's internal memoranda containing "evaluations of evidence and impressions of charges." Jolly Decl. ¶ 74 and *Vaughn* Index. In addition, although the same records include deliberative process information, the

declarant avers that "the attorney work-product and deliberative process information is so interwoven as to make it all, in essence, attorney work-product." *Id*. ¶ 76. According to the declarant, the records withheld under exemption 5 "were prepared by or at the request or direction of a U.S. Attorney and AUSA in anticipation of or during litigation." *Id*. ¶ 75. They "reflect such matters as trial strategy preparation, including draft pleadings, witness evaluations, AUSA impressions of evidence, personal evaluations and opinions relating to Plaintiff's criminal case and others, and investigation strategy including AUSA evaluations and opinions relating to a criminal prosecution." *Id*. Plaintiff has not specifically contested EOUSA's valid justifications. Accordingly, summary judgment is granted to EOUSA on it withholdings under Exemption 5.

**3. FOIA Exemption 7**

EOUSA invokes the FOIA's personal privacy exemptions, 6 and 7(C), but the Court need not address the former because the latter applies to the same records. *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause one or more of the enumerated harms set out at § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted). Given that the requested records pertain to plaintiff's criminal investigation, prosecution and conviction for murder, it is safe to conclude that the

records were compiled for law enforcement purposes. Thus, the Court turns now to the three subparts EOUSA has invoked, 7(C), 7(D) and 7(F).

**i. Exemption 7(C)**

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' " *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773); *see also Sussman*, 494 F.3d at 1115. It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). In addition, to trigger the balancing requirement, the requester "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 175.

Courts have "long recognized the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Roth*, 642 F.3d at 1174 (internal quotation marks and citations omitted). Thus, an agency may properly withhold the identities of targets of a law enforcement investigation, witnesses, informants, and law enforcement officers under exemption 7(C). *See SafeCard Servs*., 926 F.2d at 1205; *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978) ("Public identification of [law enforcement personnel] could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.").

EOUSA redacted the names and identifying information of federal law enforcement agents, "supporting" law enforcement personnel, and third-party individuals "of investigative interest or those "merely mentioned" in the files. Jolly Decl. ¶ 81. The declarant has aptly explained the potential harms in disclosing such information. *See id*. ¶¶ 82-85. The declarant avers that consideration was given to "the passage of time and its effect on the privacy interests of third-party individuals in balancing the privacy and public interests," and "[i]t was determined that the privacy interest are as strong and pertinent now as when the records were created[.]" *Id*. ¶ 80. Plaintiff has not specifically contested EOUSA's valid justifications, nor has he produced any evidence to trigger consideration of an overriding public interest. Furthermore, as previously discussed, *see supra* p. 18, plaintiff has offered no evidence to show that any withheld third-party information is in the public domain. Accordingly, summary judgment is granted to EOUSA on it withholdings under Exemption 7(C).

**ii. Exemption 7(D)**

FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis, *id*. at 179-80, and a presumption of confidentiality arises only in narrowly defined circumstances, *id*. at 181. "A source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.' " *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *Landano*, 508 U.S. at 170-74).

EOUSA "asserted this exemption to protect the identity and information of confidential source and cooperating witnesses in the U.S. Attorney memoranda" identified in the *Vaughn* index as Documents 2 and 3, and in the grand jury materials (Document 12). EOUSA's declarant does not provide evidence of an express grant of confidentiality, and the assertion of an implied grant of confidentiality is weak. However, since the memoranda are completely shielded under exemption 5 as attorney work product, and the grand jury material is completely shielded under exemption 3, the Court will not address the withholding of the same information under exemption 7(D).

### iii. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any

individual." 5 U.S.C. § 552(b)(7)(F). The D.C. Circuit has described the reach of this exemption as "expansive." *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 526 (D.C. Cir. 2015). It has found the "language" to be "very broad," and it has confirmed that the exemption "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *PEER*, 740 F.3d at 205. Moreover, "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices," *id.*, and courts generally "defer[ ] to the agency's assessment of danger," *Petrucelli v. Dep't of Justice*, 51 F. Supp. 3d 142, 172 (D.D.C. 2014) (citations omitted). Since the Court has found that EOUSA properly redacted the same information under exemption 7(C), it will not address the exemption 7(F) claim but finds it properly invoked. *See* Jolly Decl. ¶¶ 92-93.

**4. Record Segregability**

EOUSA's declarant avers that "[e]ach document was evaluated to determine if any information could be segregated and released," and that all reasonably segregable information has been released. Jolly Decl. ¶ 94. As for the documents withheld completely, the declarant avers that "no meaningful portion . . . could be released without destroying the integrity of the documents or without disclosing third-party privacy interest." *Id.* Indeed, the *Vaughn* index shows that where EOUSA withheld documents in their entirety, it relied on a combination of exemptions to justify the withholding. The Court is satisfied that EOUSA released all reasonably segregable responsive records and thus grants summary judgment to EOUSA on its withholdings.

**5. EOUSA's Referral of Records**

A referral of records may result in an improper withholding if the "net effect [of the referral procedure] is significantly to impair the requester's ability to obtain the records or

significantly to increase the amount of time he must wait to obtain them." *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998) (citation and internal quotation marks omitted; alteration in original). "An agency possessing records that originated with another agency is ultimately responsible for processing the records," but it may comply with the FOIA by consulting with the agency or agency component from which the records originated on the applicability of exemptions. *Maydak*, 254 F. Supp. 2d at 40. If the originating agency then releases the referred records to the requester, the referring agency is not obligated under the FOIA to release the same records. *See Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp.2d 28, 33 (D.D.C. 2004) (citing *Crooker v. United States State Dep't*, 628 F.2d 9, 10, 11 (D.C. Cir. 1980)).

The Court cannot determine on the current record which entity, EOUSA or USPIS, released the referred documents, when the release occurred, and what exactly was released. Consequently, the Court denies summary judgment to EOUSA on the referred records.

**2. FBI**

Plaintiff has not disputed that he failed to provide the FBI with the requested third-party authorizations or that he failed to exhaust his administrative remedies with regard to the June 30, 2015 release of records and the FBI's no-record determinations. *See* Defs' Stmt of Facts ¶¶ 52-57; 62-65; 66-68; 69-71; 72-74. A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citing 5 U.S.C. § 552(a)(6)(A)(i) & (C); *Oglesby*, 920 F.2d at 67). The Court finds summary judgment to the FBI warranted on all unexhausted claims except the June 30, 2015 release.

"FOIA 'specifically provides for an administrative appeal process following an agency's denial of a FOIA request.' " *Bayala v. United States Dep't of Homeland Sec., Office of Gen. Counsel*, 827 F.3d 31, 35 (D.C. Cir. 2016) (quoting *Oglesby*, 920 F.2d at 61; citing 5 U.S.C. § 552(a)(6)). A FOIA requester's failure to exhaust is not a jurisdictional bar to judicial review, *Wilbur*, 355 F.3d at 677; "[e]xhaustion, instead, can be a substantive ground for rejecting a FOIA claim in litigation," *Bayala*, 827 F.3d at 35. On the other hand, a court may proceed on an unexhausted claim if the "purposes and policies underlying [FOIA's] exhaustion requirement" are not undermined by its doing so. *Wilbur*, 355 F.3d at 677. The Court finds such to be the case with regard to the FBI's June 30, 2015 release of responsive records.

The FBI's release letter is dated one day after plaintiff signed the instant complaint. *See* Compl. at 70 (dated June 29, 2015). Therefore, plaintiff could not have possibly received notification of his administrative appeal rights as to that determination before he instituted this action. The FBI's declarant has averred that information was withheld under exemptions 3, 6, 7(C), 7(D) and 7(E), Hardy Decl. ¶ 23, but he has not offered any explanations for the withholdings and/or provided a *Vaughn* index. The Court will direct that be done. Consequently, as to the FBI, summary judgment is granted in part and denied in part without prejudice.

**3. BOP**

Plaintiff has not specifically challenged BOP's no-record response. Nevertheless, the Court finds from BOP's declaration that it (1) reasonably interpreted the request as "seeking BOP documents containing the name 'Joan Markman' and any interactions she may have had with plaintiff, (2) identified the inmate investigations database (TRU-INTEL) as the most likely location of responsive records, and (3) conducted a reasonably adequate search utilizing

plaintiff's name since TRU-INTEL files "are stored and accessed [by] the name of the inmate which they concern." Decl. of Kevin J. Littlejohn ¶¶ 7-12 [Dkt. # 30-5]. In addition, plaintiff has proffered nothing to counter the sworn statements that BOP did not receive his other two requests allegedly submitted in April of 2015. Kimberly Decl. ¶¶ 5-10. And "[o]f course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request," which "must 'reasonably describe[ ]' the records sought" and "comply with the agency's published procedures[.]" *Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 185, n.3 (D.C. Cir. 2013) (citation omitted). Consequently, the Court grants summary judgment as to the claims against BOP.

**4. Marshals Service**

Plaintiff has not challenged the Marshals Service's redactions of third-party information from six of the thirteen pages it released. *See* Bordley Decl. ¶¶ 30-31. The Court finds the redactions properly justified under FOIA exemption 7(C), for the same reasons stated earlier. *See supra* pp. 23-24. In addition, though not challenged, the Court is satisfied that a reasonably adequate search was conducted. *See* Bordley Decl. ¶¶ 12-14, 25. Consequently, the Court grants summary judgment as to the claims against the Marshals Service.

**5. NARA**

Plaintiff acknowledges that NARA provided information about the location of records catalogued by the Federal Records Center ("FRC"), but he goes on to suggest that NARA should have produced the records. *See* Opp'n Mem. at 40. However, NARA informed plaintiff that it maintained no criminal records dated after 1983, and it held no records from the U.S. Attorney's Office dated after 1987. *See* Attach F to Pl.'s Opp'n, ECF p. 23. Since the plea records plaintiff requested from NARA would have been created after 1987, no disclosure obligation was

triggered. *See McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (an agency is responsible for disclosing responsive records it possesses and controls at the time of the FOIA request).

Moreover, NARA's declarant explains that "[e]ach NARA FRC provides reference and other services to the Federal agency that owns the respective records. With few exceptions, NARA only has physical custody." Scanlon Decl. ¶ 6. And the D.C. Circuit has made "clear that 'not all documents in the possession of a FOIA-covered agency are 'agency records' for the purpose of that Act.' " *Am. Civil Liberties Union (ACLU) v. CIA*, 823 F.3d 655, 662 (D.C. Cir. 2016) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 216 (D.C. Cir. 2013)). "As the repository for federal records of all kinds—including ones from the judicial and legislative branches—NARA does not 'possess' documents in the same manner as other executive agencies." *Cause of Action v. Nat'l Archives & Records Admin.*, 926 F. Supp. 2d 182, 186–87 (D.D.C. 2013). As the D.C. Circuit has explained:

> The main function of the Archives is to preserve documents of enduring value from all three branches of government. The Archives does not use documents created in the three branches in any operational way, or indeed in any way comparable to any other federal agency. It may control them in a sense, but its control consists in cataloguing, storing, and preserving, not unlike a "warehouse."

*Cause of Action v. Nat'l Archives & Records Admin.*, 753 F.3d 210, 215-16 (D.C. Cir. 2014). Such is the case here. NARA's declarant avers that the requested plea records, which were also the subject of plaintiff's request to EOUSA, were "not in NARA's legal custody." Rather, the records were in the "legal control" of the U.S. Attorney's Office for the Eastern District of Pennsylvania and the Clerk of the Court for the Eastern District of Pennsylvania. *See* Scanlon Decl. ¶¶ 21-22. Consequently, NARA had no authority, let alone an obligation under FOIA, to produce such records. It therefore is entitled to judgment as a matter of law.

**6. IRS**

Plaintiff challenges the IRS's search for records responsive to his April 10, 2015 requests, which yielded no records. *See* Pl.'s Opp'n [Dkt. # 38]. The IRS's declarant is a Tax Law Specialist assigned to the FOIA group. She avers that all FOIA requests, "regardless of which office receives them, are entered into the Service's Automated Freedom of Information Act (AFOIA) system, which is the nationwide inventory control and case management system." Higley Decl. ¶ 4. AFOIA is used to "track and process" all FOIA and Privacy Act request. *Id.* A file is opened by the requester's name and a case tracking number is then assigned.

In response to an inquiry prompted by this litigation, the declarant "searched AFOIA using plaintiff's last name (with and without the 'e' on the end), his Social Security number, and first name." *Id.* ¶ 5. The declarant located two FOIA requests "with the name 'Robert Burke' in the AFOIA database[,]" and two reference numbers, F15134-0081 and F15167-0097. *Id.* Both numbers applied to plaintiff's April 10, 2015 request, which the IRS received on May 14, 2015, and acknowledged by letter dated May 15, 2015. *See* Higley Decl. ¶¶ 5-9. The IRS issued its no-records response by letter dated July 2, 2015, which "advised plaintiff of his appeal rights." *Id.* ¶ 10.

The declarant avers that "if a requester files an administrative appeal, the Office of Appeals will include notes in the file and send the Disclosure Office a copy of the closing letter which would be associated with the case file." *Id.* ¶ 11. Because plaintiff's "case file did not contain any [such] notes . . . and did not contain a copy of a closing letter[,]" the declarant "concluded that plaintiff did not file an administrative appeal from the Service's July 2, 2015 determination." *Id.* In addition, the declarant "found no record that the Service received a FOIA or Privacy Act requested dated March 18, 2015 or April 16, 2015 from plaintiff." *Id.* ¶ 12.

Plaintiff has proffered no countervailing evidence, particularly any documentation that the IRS received an appeal of the determination or received the other two FOIA requests he alleges were sent. "It cannot be said that an agency improperly withheld records if the agency did not receive a request for those records." *Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008) (citing *Kissinger,* 445 U.S. at 150). Notably, as the IRS points out in its Reply, plaintiff's alleged administrative appeals are directed to OIP, which is an office within DOJ, not Treasury. Consequently, the Court grants summary judgment to the IRS.

**7. *In Camera* Review**

FOIA authorizes the Court to examine requested agency records *in camera* to determine the propriety of withholdings. 5 U.S.C. § 552(a)(4)(B); *Spirko v. U.S. Postal Serv*., 147 F.3d 992, 996 (D.C. Cir. 1998). The decision to examine requested records *in camera* is left to the "broad discretion" of the Court. *Id*. *In camera* review may be appropriate when: "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims,"; "the number of records involved is relatively small,"; "a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed"; and "when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Security,* 384 F. Supp. 2d 100, 119 (D.D.C. 2005) (citations and quotations omitted). "Ultimately, however, courts disfavor *in camera* inspection and it is more appropriate in only the exceptional case." *Id*.; *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 253 (D.C. Cir. 1993) ("[I]n camera review is generally disfavored.").

In support of *in camera* review, plaintiff merely reasserts his arguments opposing summary judgment for EOUSA and NARA. Because both defendants have provided sufficiently

detailed affidavits explaining their respective positions, an *in camera* review of the located records is wholly unwarranted. Thus, the Court denies plaintiff's motion for *in camera* review.

**CONCLUSION AND ORDER**

For the reasons stated above, the Court finds that the defendants have satisfied their disclosure obligations under FOIA, except as to the FBI's withholding of information from its June 30, 2015 release of records and EOUSA's referral of records to the USPIS.

Accordingly, it is

**ORDERED** that Plaintiff's Motion for an *In Camera* Inspection [Dkt. # 45] is **DENIED**; it is

**FURTHER ORDERED** that the Internal Revenue Service's Motion for Summary Judgment on Counts LIII, LIV, and LV of the Complaint [Dkt. # 34] is **GRANTED**; and it is

**FURTHER ORDERED** that Defendants' Motion for Summary Judgment [Dkt. # 30] is **GRANTED in part** and **DENIED in part**. On or before **May 5, 2017**, consistent with this opinion, the FBI shall supplement the record with regard to its withholdings from the June 30, 2015 release of records, EOUSA shall supplement the record with regard to the records referred to USPIS, and Defendants shall move again for dispositive relief on those remaining issues.

**SO ORDERED**.

SIGNED: EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

DATE: March 30, 2017